UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

JOSEPH YORK,

    Plaintiff,

v.                                                                     Case No. 1-04-250

AK STEEL CORPORATION,

    Defendant.

**ORDER**

    This matter is before the Court upon defendant AK Steel Corporation's motion for partial dismissal of plaintiff's amended complaint (doc. 39), plaintiff's opposing memorandum (doc. 44), and defendant's reply in support of its motion (doc. 46).

**I. Procedural History**

    Plaintiff Joseph York filed suit against Defendant AK Steel, his former employer, alleging claims for age discrimination and violation of the Family and Medical Leave Act ("FMLA").  Subsequently, plaintiff sought and was granted leave to amend his complaint to add claims for spoliation of evidence, intentional infliction of emotional distress, and civil conspiracy over defendant's objection that the amendment was untimely and would be futile.  (See Court's Order, doc. 37).  Defendant now moves to dismiss the newly-added claims for failure to state a claim for relief (doc. 39).

1

## II.  Factual Allegations

Plaintiff makes the following allegations in support of his newly-added claims in the amended complaint.

Plaintiff worked various laborer positions throughout his tenure at the defendant corporation, most recently as a phosam attendant in the years 2000, 2001, and 2002. Phosam attendant is a dangerous and physically demanding position that involves "exposure to extreme heat, flames, heavy-duty machinery with exposure to high speed moving parts, crane operation, climbing of ladders as high as 200 feet, and walking for miles each shift."  (Amended Complaint, ¶ 9).

In 2001, plaintiff was diagnosed with uncontrolled hypertension.  Plaintiff's primary care physician, Dr. Shetwai DeSai, placed him on medications with various side effects, including vertigo and nausea.  When plaintiff's blood pressure did not come under control, his physician altered his medication.  The new medications left the plaintiff "very dizzy and nauseous" and, as a result, unable to work for extended periods of time.  Dr. DeSai filled out the necessary paperwork to excuse the plaintiff from work. Dr. Rutan, defendant's physician, granted plaintiff's request for temporary disability benefits from April 11, 2002 through May 20, 2002.  In addition to missing work due to the side effects of the blood pressure medication, plaintiff fractured his big toe in September 2002 and was unable to work.  Once again, Dr. Rutan certified plaintiff's condition and excused him from work for approximately one month.

Plaintiff's absences totaled 26 days in 2000, 15 days in 2001, and 40 days in 2002.  Despite his numerous absences, the plaintiff averaged a forty-hour work week.

After issuing several warnings and taking disciplinary action against the plaintiff, defendant discharged him on December 27, 2002 for "excessive absenteeism."

Defendant has no "absenteeism policy" but rather uses a "case by case" disciplinary approach. However, employees are not disciplined for valid medical absences. If an employee is out sick for more than three days, the employee is "red carded." Before the employee can return to work, he must be cleared by Dr. Rutan. Dr. Rutan makes his decision by evaluating all private medical records, including absence verification notices, which have been sent by the employee's primary care physician. If Dr. Rutan disagrees with the primary physician's diagnosis or treatment, the case is reviewed by an independent third party. However, if Dr. Rutan fails to challenge a primary physician's decision, the defendant is bound by the physician's findings under the collective bargaining agreement between defendant and the Armco Employees Independent Federation, of which plaintiff was a member.

"Sickness and accident" benefits are available to employees who miss work due to illness. When an employee is ill, the employee's primary care physician completes a report outlining the reason for which the employee must miss work. Again, the defendant can challenge the primary care physician's report under a third-party mechanism.

The majority of plaintiff's eighty-one absences were medically excused, and he collected "sickness and accident" benefits for most of these days. In total, plaintiff had only three unexcused absences for the three-year period. Dr. Rutan never challenged any of the plaintiff's medical excuses under the third-party mechanism. Despite plaintiff's medical excuses, defendant continued to discipline the plaintiff for his absences. As a

3

result, plaintiff filed a grievance against defendant. The Arbitrator found in favor of the plaintiff, and defendant was ordered to strike all discipline from his record. In addition to disciplining the plaintiff for medically-excused absences, defendant hired a surveillance team to videotape him outside work.

On December 23, 2002, defendant suspended the plaintiff for "5 days subject to discharge" and took his badge, precluding the plaintiff from entering the plant. During their meeting, the plaintiff requested FMLA protection. His request went unattended. Four days later, defendant met with the plaintiff again and discharged him. Again, plaintiff requested FMLA protection, and his requests were ignored.

The same day he was discharged, the plaintiff submitted an FMLA application in which Dr. DeSai certified that his blood pressure condition qualified him for intermittent FMLA protection. Defendant still refused to consider his FMLA request. The plaintiff requested these documents during discovery, but defendant said such documents did not exist.

As a result of his discharge, which came two days after the Christmas holiday, the plaintiff lost his home and other personal belongings. The plaintiff could no longer support his wife, children, or grandchildren because he had no savings. Furthermore, the plaintiff could no longer afford his blood pressure medication. Without the medicine, the plaintiff was susceptible to a stroke or heart attack.

In January 2002, the State of Ohio granted the plaintiff unemployment on the ground that he had not been excessively absent. Defendant challenged such finding, arguing that the plaintiff's discharge was valid. In anticipation of an appeal, the State

requested all medical documentation relating to the plaintiff's absences. Defendant continued to maintain that such documentation did not exist.

### III. Standard of Review

In reviewing a motion to dismiss for failure to state a claim, a court must construe the complaint in the light most favorable to the non-moving party. *Morgan v. Church's Fried Chicken*, 829 F.2d 10, 12 (6th Cir. 1987). For the purposes of this motion, the court must accept the complaint's factual allegations as true. *Id.* A court need not, however, accept as true legal conclusions or unwarranted factual inferences contained in the complaint. *Id.* In order to prevail on a motion to dismiss for failure to state a claim, the movant must demonstrate that the plaintiff can prove no set of facts in support of his claims which would entitle him to relief. *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957).

### IV. Plaintiff's Newly-added Claims

Plaintiff's claim for spoliation of evidence is based on the defendant deliberately withholding and potentially destroying documents requested by plaintiff. The claim for intentional infliction of emotional distress is premised on defendant's actions taken in connection with plaintiff's discharge. Plaintiff's claim for civil conspiracy is based on his allegation that defendant's employees maliciously combined to commit numerous acts that led to the unlawful discharge of plaintiff.

### A. Spoliation of Evidence

The Ohio Supreme Court has set forth the elements of a spoliation claim as follows: "(1) pending or probable litigation involving the plaintiff, (2) knowledge on the part of defendant that litigation exists or is probable, (3) willful destruction of evidence by defendant designed to disrupt the plaintiff's case, (4) disruption of the plaintiff's case, and (5) damages proximately caused by the defendant's acts." *Smith v. Howard Johnson Co., Inc.* 67 Ohio St.3d 28, 29, 615 N.E.2d 1037, 1038 (1993). A party may make a threshold showing of spoliation of evidence by demonstrating that the opposing party intentionally altered or destroyed the evidence before the other side had an opportunity to examine it. *Nationwide Mutual Fire Ins. Co., et. al. v. Ford Motor Co.,* 174 F.3d 801, 804 (6th Cir. 1999). "Intentional" in this context means more than knowing and willful; the evidence at issue must be destroyed "for the purpose of rendering it inaccessible or useless to the defendant in preparing its case." *Id.* Merely concealing or misrepresenting the evidence is not sufficient. *See Smith*, 67 Ohio St. 3d at 29, 615 N.E.2d at 1038.

Accepting the allegations of the complaint as true and drawing all inferences in the plaintiff's favor, it does not appear beyond a doubt that the plaintiff will be unable to prove any set of facts in support of his spoliation claim. Plaintiff alleges that during discovery, he requested a copy of the FMLA application he purportedly submitted to defendant on the day of his discharge and his FMLA file, but defendant would not produce the documents, stating they did not exist. The plaintiff alleges that defendant "deliberately withheld" or "potentially destroyed" these documents to prevent him from supporting his claims in this lawsuit. Assuming plaintiff submitted the application and other relevant documents to defendant, it does not appear that he will be unable to prove

defendant willfully destroyed the documents to thwart his case and that he has suffered damages as a result. Accordingly, the Court will not dismiss plaintiff's spoliation claim at this stage of the proceedings.

**B. Intentional Infliction of Emotional Distress**

The elements of a claim for intentional infliction of emotional distress are: "(1) that the actor either intended to cause emotional distress or knew or should have known that actions taken would result in serious emotional distress to the plaintiff; (2) that the actor's conduct was so extreme and outrageous as to go 'beyond all possible bounds of decency' and was such that it can be considered as 'utterly intolerable in a civilized community,' . . . (3) that the actor's actions were the proximate cause of plaintiff's psychic injury; and (4) that the mental anguish suffered by plaintiff is serious and of a nature that 'no reasonable man could be expected to endure it.'" *Pyle v. Pyle*, 11 Ohio App.3d 31, 34, 463 N.E.2d 98, 103 (8th Dist. 1983).

Plaintiff alleges that despite the fact that virtually all his absences were medically excused, merely two days before Christmas, the defendant pulled his badge and denied him access to the plant; four days later and thirty days before plaintiff's thirty-year retirement, the defendant discharged him; notwithstanding the fact that the plaintiff had complied with defendant's reporting off procedure, he was continually disciplined for "excessive absenteeism;" defendant hired a surveillance team to videotape the plaintiff's personal life; and as a result of his discharge, the plaintiff lost his home and other personal belongings and can no longer afford his medication. These allegations are

7

sufficient to preclude dismissal of plaintiff's claim for intentional infliction of emotional distress under Rule 12(b)(6).

**C.  Civil Conspiracy**

A civil conspiracy claim has four elements: "(1) a malicious combination; (2) two or more persons; (3) injury to person or property; and (4) existence of an unlawful act independent from the actual conspiracy." *Nilavar v. Mercy Health Sys.*, 142 F. Supp. 2d 859, 888 (S.D. Ohio 2000). The intracorporate conspiracy doctrine provides that, as a general rule, a corporation cannot conspire with its own agents or employees. *Hull v. Cuyahoga Valley Joint Vocational Sch. Dist. Bd. of Edu.*, 926 F.2d 505, 509 (6th Cir. 1991). If all those alleged to be involved in the conspiracy are employees of the corporate defendant, there are not two separate "people" to form a conspiracy. *Id.* at 510. However, under the "scope of employment" exception, employees of a corporation can conspire with the corporation or one another when they act outside the scope of their employment. *See Johnson v. Hills & Dales Gen'l Hosp.*, 40 F.3d 837, 840 (6th Cir. 1994).

Ohio law provides that "an employee acts within the scope of employment if the employee acts within his authority during the course of employment even though acting intentionally or maliciously." *Singleton v. United States*, 277 F.3d 864, 871 (6th Cir. 2002) (citing *RMI Titanium Co. v. Westinghouse Elec. Corp.*, 78 F.3d 1125, 1143 (1996)). The issue is whether "the actions complained of . . . are so divergent that [their] very character severs the relationship of employer and employee." *Id.* (citing *RMI*, 78 F.3d at 1144). Unlawful activity of an employee is not enough, by itself, to permit the

8

conclusion that an employee acted outside the scope of employment. *RMI*, 78 F.3d at 1144.

The Court finds that the plaintiff has not alleged sufficient facts to withstand defendant's motion to dismiss the civil conspiracy claim. Plaintiff expressly states in the amended complaint that defendant's employees were acting within the scope of their employment when they combined to commit numerous acts that led to plaintiff's unlawful discharge. Plaintiff nonetheless argues that it is not possible to interpret the complaint as conceding this point because the complaint further alleges that defendant's employees acted maliciously, which necessarily means that they exceeded their authority as corporate employees. Plaintiff's argument is not well-taken. Even assuming defendant's employees acted maliciously, the actions alleged are not so divergent as to sever the relationship of employer and employee and take the employees' actions outside the scope of their employment. Therefore, the intracorporate conspiracy doctrine applies to bar plaintiff's civil conspiracy claim.

## V. Conclusion

In accordance with the foregoing, defendant's motion to dismiss the complaint pursuant to Fed. R. Civ. P. 12(b)(6) is **GRANTED IN PART** and **DENIED IN PART**. AK Steel's motion is **DENIED** with respect to plaintiff's intentional infliction of emotional distress and spoliation of evidence claims. The motion to dismiss the civil conspiracy claim is **GRANTED**. Plaintiff's civil conspiracy claim is **DISMISSED** with prejudice.

**IT IS SO ORDERED.**

            S/ Herman J. Weber
            HERMAN J. WEBER, SENIOR JUDGE
            UNITED STATES DISTRICT COURT

F:\SHARED\HJW\HJWA\04-250fmlamtdPUB.wpd