UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

JOSEPH YORK,

    Plaintiff,

v.                                                    Case No. C-1-04-250

AK STEEL CORPORATION,

    Defendant.

**ORDER**

This matter is before the Court upon defendant's motion for summary judgment (doc. 47). Plaintiff opposes the motion (doc. 51). The parties have submitted proposed findings of fact and conclusions of law, which the opposing side has highlighted as true, false, or irrelevant (docs. 59, 64).

**I. Introduction**

Plaintiff brings a claim under the Family and Medical Leave Act (FMLA), 29 U.S.C. § 2611, alleging that defendant terminated him to prevent him from using FMLA leave and in retaliation for his request to take FMLA leave (Count I); a claim of age discrimination in violation of Ohio Rev. Code § 4112 (Count II); a claim for breach of Ohio public policy (Count III); a claim for spoliation of evidence (Count IV); a claim for intentional infliction of emotional distress (Count V); and a claim for civil conspiracy (Count VI). Defendant filed a motion to dismiss plaintiff's claims for spoliation of evidence, intentional infliction of emotional distress,

and civil conspiracy as asserted in his amended complaint. By Order dated November 30, 2005, the Court denied the motion as to the spoliation of evidence and intentional infliction of emotional distress claims and dismissed the civil conspiracy claim (doc. 63).

Defendant filed its motion for summary judgment prior to the Court's ruling on the motion to dismiss. Defendant moves for summary judgment on all claims. Defendant alleges that (1) plaintiff's claim that AK Steel wrongfully denied him FMLA leave fails as a matter of law because plaintiff did not have a serious health condition entitling him to FMLA leave; (2) plaintiff's claim that his termination was in retaliation for requesting FMLA leave fails as a matter of law because plaintiff did not engage in activity protected by the FMLA and he can present no evidence showing a causal connection between his request for FMLA protection and the adverse employment action; (3) plaintiff's age discrimination claim is barred under Ohio Rev. Code § 4112.14(C) because he had an opportunity to arbitrate his discharge pursuant to his union's collective bargaining agreement with AK Steel; even if his claim were not barred for this reason, he cannot establish a prima facie case of age discrimination under Ohio law because defendant did not choose to replace him with a substantially younger employee, but instead the seniority rules of the collective bargaining agreement dictated who would replace plaintiff; plaintiff cannot refute defendant's legitimate, nondiscriminatory reason for his discharge; and plaintiff has no evidence that creates an inference that his termination was related in any way to discriminatory animus based on his age; (4) plaintiff's claim of wrongful discharge in violation of public policy must fail because first, plaintiff was not an at-will employee, but instead his employment was governed by the terms of a collective bargaining agreement, and second, there is a statutory remedy that protects the public policy against age discrimination; (5) plaintiff's

speculation does not create an issue of fact with regard to his spoliation of evidence claim; and (6) plaintiff has not stated a claim for intentional infliction of emotional distress and has not suffered the serious emotional distress necessary to establish such a claim.[1]

## II. Undisputed Facts

1. Plaintiff Joseph York was born on May 14, 1954.

2. Defendant AK Steel hired plaintiff on January 26, 1973.

3. Plaintiff's employment was terminated on December 30, 2005, allegedly for unexcused absences.

4. Prior to his discharge, plaintiff worked as a Phosam Attendant in the Coke Plant at AK Steel's Middletown Works. The Phosam Attendant's duties include checks for safety, taking water samples, testing waters, making acid, and running acid samples.

5. Plaintiff was absent 26 days in 2000, 15 days in 2001, and 40 days in 2002.

6. From April 14, 2002 to May 11, 2002, plaintiff was off "sick" for four straight weeks immediately preceding a two-week vacation.

7. Plaintiff reported off "sick" and missed work on June 26 and June 27, 2002.

8. Plaintiff called off in August 2002. He was disciplined for excessive absenteeism.

9. Plaintiff missed multiple days of work from September 23, 2002 to October 5, 2002.

---

[1] The Court need not address the motion for summary judgment on the civil conspiracy claim since this claim has been dismissed.

10. Plaintiff visited defendant's on-site physician, Dr. John Rutan, on October 2, 2002, regarding a fractured big toe. Dr. Rutan examined plaintiff. He wrote orders to obtain an x-ray from Middletown Regional Hospital.

11. On November 22, 2002, plaintiff's wife called him in sick. He returned to work on November 23, 2002.

12. Plaintiff reported off "sick" on December 18, 2002. He missed two days of work on December 18 and December 19, 2002.

13. Plaintiff claims that his absences were because of side effects he experienced from taking blood pressure medication. Plaintiff complained that at times his hypertension medication made him feel dizzy and nauseous.

14. Defendant's procedure for calling in sick requires employees to call in to the Department, when feasible, some time prior to the employee's shift. The employee leaves a message with the individual taking the call, and the individual will fill out an "Absence Documentation" form.

15. If an employee is off more than three consecutive days, the employee must be "red carded," meaning the employee must visit defendant's medical department and be cleared to return to work by Dr. Rutan. The department supervisor will notify Dr. Rutan if an employee has missed more than three consecutive days.

16. Dr. Rutan's role is that of an occupational physician. As such, he does not develop a physician-patient relationship with the employees.

17. Regarding eligibility for the FMLA, Dr. Rutan conducts no medical examinations and makes no medical determinations as to whether an employee suffers from a "serious health condition" under the FMLA.

18. An employee need not specifically request FMLA leave by name, but rather, AK Steel notifies an employee when it receives sufficient notice that the employee is requesting leave that is protected under the FMLA.

19. Defendant initiated discharge proceedings against plaintiff. Members of AK Steel management, including Senior Labor Relations Representative Tom Brickey, held a disciplinary meeting with plaintiff and his union representative on December 23, 2002. Also present at the meeting were Brian Bennett and Dave Chmielewske for the company and Don Magee and "Sarge Fetters" for the union, representing plaintiff. The purpose of the meeting was to discuss plaintiff's absenteeism.

20. Plaintiff was disciplined on December 23, 2002 and December 27, 2002.

21. The parties' collective bargaining agreement provides a grievance and arbitration procedure for resolving employment-related disputes.

22. Plaintiff requested an appeal hearing pursuant to the collective bargaining agreement. An appeal hearing was held on December 27, 2002.

23. Plaintiff's termination followed on December 30, 2005. Plaintiff was one month short of being eligible for his 30-year retirement pension at that time.

24. Plaintiff filed a written grievance contesting his discharge on December 31, 2002. He subsequently withdrew the grievance.

### III. Summary judgment standard

Fed. R. Civ. P. 56 allows summary judgment to secure a just and efficient determination of an action. This Court may only grant summary judgment as a matter of law when the moving party has identified, as its basis for the motion, an absence of any genuine issue of material fact. ***Celotex Corp. v. Catrett***, 477 U.S. 317, 327 (1986).

The party opposing a properly supported motion for summary judgment "may not rest upon the mere allegations or denials of his pleading, but . . . must set forth specific facts showing that there is a genuine issue for trial." ***Anderson v. Liberty Lobby***, 477 U.S. 242, 248 (1986) (quoting ***First Nat'l Bank of Arizona v. Cities Serv. Co.***, 391 U.S. 253 (1968)). The evidence of the nonmovant is to be believed and all justifiable inferences are to be drawn in his favor. ***Anderson***, 477 U.S. at 255 (citing ***Adickes v. S.H. Kress & Co.***, 398 U.S. 144, 158 (1970)).

The court is not to weigh the evidence and determine the truth of the matter but is to decide whether there is a genuine issue for trial. ***Anderson***, 477 U.S. at 249. There is no genuine issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party. ***Id.*** at 249 (citing ***Cities Serv.***, 391 U.S. at 288-289). If the evidence is merely colorable, ***Dombrowski v. Eastland,*** 387 U.S. 82, 84 (1967), or is not significantly probative, ***Cities Serv.***, 391 U.S. at 290, judgment may be granted. ***Anderson***, 477 U.S. at 249.

### IV. FMLA claim

Defendant argues that it is entitled to summary judgment on plaintiff's claim that it wrongfully denied him FMLA leave and retaliated against him for requesting FMLA leave. In response, plaintiff claims that he suffered from serious medical conditions in 2000, 2001, and

6

2002. Plaintiff alleges that from August 20, 2000 through September 16, 2000, he suffered an injury to his neck and missed four consecutive weeks, for which his doctor executed forms certifying that he was incapacitated and totally unable to work during this time period. From January 22, 2001 through February 1, 2001, plaintiff asserts that he was out of work with a lumbar strain for which his doctor executed an authorization form certifying that plaintiff was continuously and totally incapacitated during this time period. Plaintiff alleges that in 2002, he suffered the symptoms and side effects of uncontrolled hypertension, as a result of which he was certified as "totally unable to work" from April 16, 2002 through May 20, 2002. Plaintiff claims that he visited his doctor for treatments on four days during this time frame and was examined by Dr. Rutan at AK Steel on four days during the same time frame. Plaintiff contends that he was certified by his physician as unable to work on the two consecutive days he missed in June 2002 and from July 31, 2002 through August 3, 2002. Plaintiff alleges that his extended illnesses and injuries constituted protected leave under the FMLA and that, as such, defendant had an affirmative duty to notify plaintiff of his rights under the FMLA if defendant "reasonably could have concluded" that plaintiff's absences constituted FMLA leave. Plaintiff alleges that defendant retaliated against him for exercising his rights under the FMLA by discharging him for taking FMLA-protected leave.

Under the FMLA, "an eligible employee shall be entitled to a total of 12 workweeks of leave during any 12-month period ... [b]ecause of a serious health condition that makes the employee unable to perform the functions of the position of such employee." 29 U.S.C. § 2612(a)(1)(D). The FMLA defines the term "serious health condition" to mean "an illness, injury, impairment, or physical or mental condition that involves--(A) inpatient care in a

hospital, hospice, or residential medical care facility; or (B) continuing treatment by a health care provider." 29 U.S.C. § 2611(11). An employer is prohibited from discriminating against an employee who has used FMLA leave, such as by using the taking of FMLA leave as a negative factor in employment actions or by counting FMLA leave under "no fault" attendance policies. 29 C.F.R. § 825.220(c).

In FMLA cases that rely upon indirect evidence, the three-step *McDonnell Douglas* paradigm applies. *See Skrjanc v. Great Lakes Power Service Co.,* 272 F.3d 309, 315 (6th Cir. 2001). A plaintiff may establish a prima facie case of retaliatory discharge under the FMLA by showing that (1) he availed himself of a protected right under the FMLA, (2) he was adversely affected by an employment decision, and (3) there is a causal connection between his exercise of a right under the FMLA and the adverse employment decision. *Id.* at 314 (citing *Canitia v. Yellow Freight Sys., Inc.*, 903 F.2d 1064, 1066 (6th Cir.1990)). The burden then shifts to the defendant to articulate a legitimate, nondiscriminatory reason for the adverse employment action. *Id.* at 315. If the defendant articulates such a reason, then the plaintiff has the burden of showing that the articulated reason is a pretext for discrimination. *Id.* In order to establish a causal link, the plaintiff must "proffer evidence 'sufficient to raise the inference that [his] protected activity was the likely reason for the adverse action.'" *Zanders v. National R.R. Passenger Corp.,* 898 F.2d 1127, 1135 (6th Cir.1990) (quoting *Cohen v. Fred Meyer, Inc.,* 686 F.2d 793, 796 (9th Cir. 1982)).

To invoke the protection of the FMLA, an employee must inform his employer of the need for leave and the qualifying reason for the need. *Brohm v. JH Properties, Inc.,* 149 F.3d 517, 523 (6th Cir. 1998) (citing *Manuel v. Westlake Polymers Corp.,* 66 F.3d 758, 762 (5th

8

Cir.1995)). Title 29 C.F.R. § 825.302 specifies the rights and obligations of an employer and employee with regard to notice when the need for FMLA leave is foreseeable. Section 825.303 specifies "the requirements for an employee to furnish notice to an employer where the need for FMLA leave is not foreseeable." This section provides, in pertinent part, as follows:

> (a) When the approximate timing of the need for leave is not foreseeable, an employee should give notice to the employer of the need for FMLA leave as soon as practicable under the facts and circumstances of the particular case. It is expected that an employee will give notice to the employer within no more than one or two working days of learning of the need for leave, except in extraordinary circumstances where such notice is not feasible. In the case of a medical emergency requiring leave because of an employee's own serious health condition . . . written advance notice pursuant to an employer's internal rules and procedures may not be required when FMLA leave is involved.
>
> (b) The employee should provide notice to the employer either in person or by telephone, telegraph, facsimile ("fax") machine or other electronic means . . . The employee need not expressly assert rights under the FMLA or even mention the FMLA, but may only state that leave is needed. The employer will be expected to obtain any additional required information through informal means. The employee . . . will be expected to provide more information when it can readily be accomplished as a practical matter, taking into consideration the exigencies of the situation.

The Sixth Circuit in ***Cavin v. Honda of America Manufacturing Inc.,*** 346 F.3d 713, 723-24 (6th Cir. 2003), summarized the notification requirements of the FMLA as follows:

> [T]o invoke the protection of the FMLA, an employee must provide notice and a qualifying reason for requesting the leave. ***Brohm v. JH Props., Inc.,*** 149 F.3d 517, 523 (6th Cir.1998). However, '[a]n employee does not have to expressly assert his right to take leave as a right under the FMLA.' ***Hammon v. DHL Airways, Inc.,*** 165 F.3d 441, 450 (6th Cir.1999); *see* 29 C.F.R. §§ 825.302(c), 825.303(b). Because an employee need not expressly invoke the FMLA, '[t]he critical question is whether the information imparted to the employer is sufficient to reasonably apprise it of the employee's request to take time off for a serious health condition.' ***Brohm,*** 149 F.3d at 523 (quotation omitted). '[A]n employee gives his employer sufficient notice that he is requesting leave for an FMLA-qualifying condition when he gives the employer enough information for the employer to reasonably conclude that an event described in the FMLA § [2612(a)(1)] has occurred.' ***Hammon,*** 165 F.3d at 451.

The Court noted that "[w]hat is practicable, both in terms of the timing of the notice and its content, will depend upon the facts and circumstances of each individual case." *Id.* at 724 (citing *Manuel*, 66 F.3d at 764. The Court further noted that failure to use the word "leave" or the phrase "leave of absence" is not determinative of whether notice requirements have been satisfied since "an employee can give notice sufficient to make his employer aware that he needs FMLA-qualifying leave without using the words "leave" or "leave of absence." *Id.* at 725.

The issue of proper notice of the need for FMLA leave is a mixed question of law and fact. *Id.* at 713. Although "it is within the province of the jury to determine the facts of the notice given, it is for the court to determine whether those facts are sufficient reasonably to give an employer notice as required by the FMLA." *Id.* Thus, for summary judgment purposes, the court should determine whether, viewing the facts in the light most favorable to the plaintiff, the plaintiff has complied with the FMLA's notice requirements as a matter of law. *Id.*

Title 29 C.F.R. § 825.305 specifies when an employee must provide medical certification to support FMLA leave:

> (a) An employer may require that an employee's leave . . . due to the employee's own serious health condition that makes the employee unable to perform one or more of the essential functions of the employee's position, be supported by a certification issued by the health care provider of the employee . . . An employer must give notice of a requirement for medical certification each time a certification is required; such notice must be written notice whenever required by § 825.301. An employer's oral request to an employee to furnish any subsequent medical certification is sufficient.
> * * *
>
> (d) At the time the employer requests certification, the employer must also advise an employee of the anticipated consequences of an employee's failure to provide adequate certification. The employer shall advise an employee whenever the employer finds a certification incomplete, and provide the employee a reasonable opportunity to cure any such deficiency. 29 CFR § 825.305.

The Court finds that there are several disputed issues of material fact which preclude a grant of summary judgment in defendant's favor on the FMLA claim. These include whether plaintiff suffered one or more serious health conditions for which he was entitled to FMLA leave and whether plaintiff was disciplined or terminated for taking leave that was protected under the FMLA. Moreover, there is an issue as to whether plaintiff gave defendant sufficient notice of the need to take FMLA leave and the reasons for the need to take leave. Further development of the record and weighing of the evidence is necessary before this issue can be resolved. Accordingly, defendant is not entitled to summary judgment on the FMLA claim.

### V. Age discrimination

Defendant argues that plaintiff's age discrimination claim is barred under Ohio Rev. Code § 4112.14(C), which provides that a cause of action for age discrimination under the statute "shall not be available in the case of discharges where the employee has available to the employee the opportunity to arbitrate the discharge or where a discharge has been arbitrated and has been found to be for just cause." Defendant contends that plaintiff had an opportunity to contest his discharge through the arbitration procedure that was available to him under the collective bargaining agreement between AK Steel and plaintiff's union, but he chose to withdraw his grievance in order to receive retirement pension benefits to which he was not otherwise entitled.

Plaintiff argues that although his discrimination claim hinges on whether he was terminated because of his age, the supporting facts do not require the Court to interpret the collective bargaining agreement, so that § 4112.14(C) does not apply to his claim. Plaintiff relies on **Beatty v. UPS,** 267 F.Supp.2d 823 (S.D. Ohio 2003) in support of his position. Plaintiff

11

also relies on *Luginbihl v. Milcor Ltd. Partnership,* 2002 WL 987853, *7 (Ohio App. 3 Dist. 2002) for the proposition that his failure to pursue the grievance process to final arbitration is of no consequence in this case because an employee who has abandoned the grievance procedure can still bring a statutory claim. Plaintiff further argues that his age discrimination claim presents a question of fact to be determined by a jury since the circumstances were such that there was not a "level playing field between the parties" with regard to the grievance. Plaintiff alleges that this was so because he had a serious medical condition that required constant medication and doctors' care, and he would have had to go without any kind of financial support or medical benefits while arbitration was pending.

It is clear that § 4112.14(C) applies to plaintiff's age discrimination claim. Plaintiff's reliance on *Beatty*, 267 F.Supp.2d 823, in support of his contrary position is misplaced. The court in *Beatty* determined that the plaintiff's state law claims were not preempted by the Labor Management Relations Act since the claims arose under state anti-discrimination statutes and common law and did not turn on an interpretation of the collective bargaining agreement. The court did not address whether the plaintiff's claims were barred by § 4112.14(C). Plaintiff's reliance on *Luginbihl* is likewise misplaced. *Luginbihl* held that § 4112.14(C) does not apply to any claim *not* sounding in age discrimination. *Luginbihl* does not support the proposition that an employee who has abandoned the grievance procedure can still bring a claim for age discrimination under § 4112.14.

In this case, it is undisputed that plaintiff had an opportunity to arbitrate his grievance under the collective bargaining agreement. Plaintiff filed a written grievance contesting his discharge on December 31, 2002. Magee depo., p. 10; Magee depo. exh. 1. Plaintiff testified

12

that he could have taken the grievance "the whole way" to arbitration. Plaintiff's depo., pp. 88-89. The record discloses that after filing the grievance, however, plaintiff approached his union representative, Don Magee, and told him that he wanted to work out a deal with the company whereby he would withdraw the grievance in exchange for receiving full 30-year retirement pension benefits, to which plaintiff was not otherwise entitled since he was approximately one month shy of 30 years of service. Magee depo., pp. 11-13. The union and defendant did reach such an agreement, and plaintiff thereby forfeited his right to arbitrate the discharge under the collective bargaining agreement. Magee depo., p. 13. Although plaintiff may have made this decision based on his tenuous financial situation, he has not presented any facts that would indicate that his agreement was the product of duress and he has not cited any case law to show that it was invalid for any other reason. Accordingly, because plaintiff had an opportunity to arbitrate his discharge but failed to do so, he may not pursue a cause of action for age discrimination under § 4112.14. Defendant is therefore entitled to summary judgment on the age discrimination claim.

## VI. Public policy claim

In ***Greeley v. Miami Valley Maintenance Contrs., Inc.***, 49 Ohio St.3d 228, 551 N.E.2d 981 (1990), the Ohio Supreme Court recognized the tort of wrongful discharge in violation of public policy as an exception to the employment-at-will doctrine. The tort requires four elements: (1) a clear public policy existed and was manifested in a state or federal constitution, statute or administrative regulation, or in the common law (the clarity element); (2) dismissing employees under circumstances like those involved in the plaintiff's dismissal would jeopardize the public policy (the jeopardy element); (3) the plaintiff's dismissal was motivated by conduct

13

related to the public policy (the causation element); and (4) the employer lacked overriding legitimate business justification for the dismissal (the overriding justification element). ***Collins v. Rizkana***, 73 Ohio St.3d 65, 69-70, 652 N.E.2d 653, 657-58 (1995)(citing H. Perritt, The Future of Wrongful Dismissal Claims: Where Does Employer Self Interest Lie? (1989), 58 U.Cin.L.Rev. 397, 398-99).

Defendant contends that plaintiff's claim for wrongful discharge in violation of public policy fails as a matter of law because (1) plaintiff was not an employee-at-will since he was a member of a bargaining unit and a party to a collective bargaining agreement, and (2) Ohio Rev. Code Ch. 4112 provides a statutory remedy that protects the public policy against age discrimination. Defendant contends that Ohio appellate courts have repeatedly rejected public policy claims based solely on Chapter 4112's policy against discrimination.

Plaintiff cites several cases for the proposition that an individual who brings a claim for age discrimination is permitted to pursue tort remedies by filing a claim for violation of public policy. Plaintiff argues that Ohio precludes the bringing of a public policy claim only where the claim is premised on a violation of the FMLA and that a public policy claim is not precluded where it is based on age discrimination. Plaintiff has not addressed defendant's argument that he cannot bring a public policy claim because he is not an at-will employee.

The public policy tort recognized in *Greeley* is an exception to the employment-at-will doctrine. In order for an employee to bring a cause of action pursuant to *Greeley*, the employee must have been an employee-at-will. ***Haynes v. Zoological Society of Cincinnati,*** 73 Ohio St.3d 254, 652 N.E.2d 948, 951, syll. (1995). An employee who is subject to a collective bargaining agreement that limits the employer's power to terminate union members is not an employee-at-

14

will and therefore falls outside the class of employees for whom *Greeley* provides protection. *Id.* at 258; ***see also Noday v. Mahoning County Sheriff,*** 147 Ohio App.3d 38, 43, 768 N.E.2d 91, 100 (2002); ***Collins v. Yellow Freight System, Inc.,*** 93 Fed. Appx. 854, 863 (6th Cir. 2004) (not published in Fed. Reporter).

Plaintiff does not dispute that he was subject to a collective bargaining agreement that limited defendant's power to terminate him and that he was therefore not an employee-at-will subject to the protection afforded under *Greeley*. Accordingly, plaintiff is precluded under Ohio law from bringing a claim for violation of public policy based on his alleged wrongful discharge.

### VII. Spoliation of evidence

The law governing a spoliation of evidence claim in Ohio is set forth in the Court's Order on defendant's motion to dismiss. The elements of such a claim are as follows: "(1) pending or probable litigation involving the plaintiff, (2) knowledge on the part of defendant that litigation exists or is probable, (3) willful destruction of evidence by defendant designed to disrupt the plaintiff's case, (4) disruption of the plaintiff's case, and (5) damages proximately caused by the defendant's acts." ***Smith v. Howard Johnson Co., Inc.,*** 67 Ohio St. 3d 28, 29, 615 N.E.2d 1037, 1038 (1993). "Intentional" means more than knowing and willful; the evidence at issue must be destroyed "for the purpose of rendering it inaccessible or useless to the defendant in preparing its case." ***Nationwide Mutual Fire Ins. Co. v. Ford Motor Co.,*** 174 F.3d 801, 804 (6th Cir. 1999).

Plaintiff cites pages 8 and 201 of his deposition in support of his contention that he had his doctor execute the appropriate application for FMLA leave and that he physically submitted the completed application to defendant. Plaintiff's opposing memo., p. 44. Plaintiff asserts that "the FMLA file was in fact destroyed by either Mike Lehman [the employee responsible for

15

FMLA leave at AK Steel] or by one of his staff members." *Id.* Plaintiff claims that neither his FMLA file nor the completed application were produced in response to his request for production of documents, defendant denies receiving the FMLA form completed by Dr. DeSai, and Lehman could not find the FMLA file upon conducting a search for same. Plaintiff also argues that defendant's alleged destruction of the evidence has disrupted his case and caused him damages. Defendant alleges that plaintiff did not turn in FMLA paperwork to anyone at AK Steel. Defendant contends that contrary to plaintiff's representations in his opposing memorandum, plaintiff did not state at page 8 or page 201 of his deposition that he physically submitted a completed FMLA application to defendant, but instead he stated that he gave the papers to Magee and that he could not have gone inside the gate with Magee to turn the paperwork in because plaintiff was not allowed on company property. See plaintiff's depo., pp. 42-43, 206-07. Defendant notes that although plaintiff believes Magee turned in the FMLA form somewhere "inside the gate," plaintiff does not know what the union did with the form, plaintiff's depo., pp. 206-07, 248, and Magee testified at his deposition that he has no recollection of presenting defendant with any FMLA paperwork on plaintiff's behalf. Magee depo. at 23-24, 30-31, 33. Defendant also notes that Magee wrote and signed a letter to AK Steel dated December 27, 2002, stating that plaintiff gave the form to Sharon Amburgey in the benefits office outside the gate. Magee depo. exh. 2. Defendant asserts that, in short, no one can attest to the FMLA form being turned in.

     Upon careful review of the record, the Court finds that plaintiff has not come forward with sufficient evidence to create a genuine issue of material fact on his spoliation of evidence claim. Plaintiff's own testimony and that of Don Magee is inconclusive as to whether an FMLA

application was ever submitted to defendant on plaintiff's behalf. Assuming for summary judgment purposes that an application was submitted to defendant, there is no evidence that would permit a reasonable jury to conclude that defendant willfully destroyed the application. Plaintiff testified that the papers "probably got throwed away or whatever, I don't know." Plaintiff's depo., p. 209. Plaintiff testified later in his deposition that he was "pretty sure" AK Steel probably threw the papers away, a belief plaintiff based on the fact that the company had "fired [him] after 30 years for being sick." Plaintiff's depo., pp. 248-49. Plaintiff's speculation is not sufficient to establish that the company destroyed his FMLA application and falls far short of permitting a finding that the company willfully destroyed the paperwork with the intention of disrupting plaintiff's case. Accordingly, defendant is entitled to summary judgment on plaintiff's spoliation of evidence claim.

### VIII. Intentional infliction of emotional distress

Ohio recognizes the tort of intentional infliction of emotional distress. ***Yeager v. Local Union 20, Teamsters, Chauffeurs, Warehousemen & Helpers***, 6 Ohio St.3d 369, 453 N.E.2d 666 (1983). The elements of a claim for intentional infliction of emotional distress are: "1) that the actor either intended to cause emotional distress or knew or should have known that actions taken would result in serious emotional distress to the plaintiff; 2) that the actor's conduct was so extreme and outrageous as to go 'beyond all possible bounds of decency' and was such that it can be considered as 'utterly intolerable in a civilized community,' . . . 3) that the actor's actions were the proximate cause of plaintiff's psychic injury; and 4) that the mental anguish suffered by plaintiff is serious and of a nature that 'no reasonable man could be expected to endure it.'" ***Pyle v. Pyle***, 11 Ohio App.3d 31, 34, 463 N.E.2d 98, 103 (8th Dist. 1983).

17

Plaintiff has failed to come forward with sufficient evidence to create a genuine issue of material fact on his claim for intentional infliction of emotional distress. Plaintiff has not produced any evidence to show that he suffered mental anguish that was serious and was of a nature that "no reasonable man could be expected to endure it." Accordingly, defendant is entitled to summary judgment on this claim.

## IX. Conclusion

In accordance with the foregoing, defendant's motion for summary judgment is **GRANTED** as to plaintiff's claims for age discrimination, breach of Ohio public policy, spoliation of evidence, and intentional infliction of emotional distress. Those claims are **DISMISSED.** The motion is **DENIED** as to plaintiff's claim under the FMLA. The case will proceed to trial on that claim in accordance with the schedule established by the Court.

**IT IS SO ORDERED.**

                                        S/ Herman J. Weber
                                        HERMAN J. WEBER, SENIOR JUDGE
                                         UNITED STATES DISTRICT COURT

J:\HJWA\04-250fmlaspltnevmsjPUB.wpd